IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GABRIELA PTASINSKA, on behalf of herself and all others similarly situated, | Case No. 07-cv-03795 |
| Plaintiff, | Civil Action |
| v. | JURY TRIAL DEMANDED |
| UNITED STATES DEPARTMENT OF STATE; CONDOLEEZZA RICE, Secretary of State; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MICHAEL CHERTOFF, Secretary of Homeland Security; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; EMILIO T. GONZALEZ, Director of USCIS; F. GERARD HEINAUER, Director of the USCIS Nebraska Service Center; | Honorable Charles P. Kocoras |
| Defendants. | |

## AMENDED COMPLAINT

NOW COMES Plaintiff, GABRIELA PTASINSKA ("Ptasinska"), on behalf of herself and all others similarly situated, by and through her attorneys, AZULAY, HORN & SEIDEN, LLC, and as for her Amended Complaint against Defendants states as follows:

NATURE OF COMPLAINT

1. This case involves the arbitrary and capricious acts of the United States Citizenship and Immigration Service, the State Department, and the other named Defendants as they relate to Defendants' wholesale departure from federal law, regulations, and some 30 years of pattern and practice regarding the issuance and then abrupt withdrawal of a visa bulletin announcing the availability of visa numbers for an entire class of aliens eligible for their employment-based green cards, and the fallout from that act.

2. Defendants' subsequent acts have failed to fully rectify the situation and, therefore, Plaintiff and others similarly situated continue to suffer significant and ongoing harms.

JURISDICTION

3. This Court has jurisdiction over this action under 28 USC §§ 1331 and 1343 as well as principles of pendent and supplemental jurisdiction. Specifically, Plaintiff's claims arise under the laws of the United States, *i.e.* the Immigration and Nationality Act ("INA"), 8 USC §1101 *et seq.*, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA"), and the regulations arising thereunder. This Court also has jurisdiction under the Declaratory Judgment Act, 28 USC §2201; and the Administrative Procedure Act, 5 USC §701. This Court may grant relief pursuant to 28 USC §§1361, 2202, and 5 USC §702, *et seq.*

4. There are no administrative remedies available to Plaintiffs or class members to redress the grievances described herein. This action does not challenge the granting or denials of individual applications; therefore, the jurisdictional limitations under the INA §242, 8 USC §1252, do not apply.

VENUE

5. Venue is proper in this district pursuant to 28 USC § 1391.

PARTIES

6. Plaintiff, Gabriela Ptasinska ("Ptasinska"), is a native of Poland and is lawfully present in the United States on an H1B non-immigrant visa, working as a land planner with Manhard Consulting, Ltd., which is engaged in the business of civil engineering services; she is a resident of Chicago, Illinois, and her priority date is December 12, 2003.

2

7. Defendant, the United States Department of State ("State Department"), is a Cabinet department of the United States federal government and is the lead foreign affairs federal agency; the State Department issues the monthly visa bulletin.

8. Defendant, Condoleezza Rice ("Rice"), is the current United States Secretary of State and is the head of the State Department. She is sued in her official capacity.

9. Defendant, the United States Department of Homeland Security ("DHS"), is a Cabinet department of the United States federal government and is responsible for protecting the territory of the United States from terrorist attacks and responding to natural disasters.

10. Defendant, Michael Chertoff ("Chertoff"), is the current United States Secretary of Homeland Security and is the head of DHS. He is sued in his official capacity.

11. Defendant, the United States Citizenship and Immigration Services ("USCIS"), is a federal agency under the aegis of DHS and is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services policies and priorities, including, *inter alia*, adjudication of immigrant visa petitions; adjudication of naturalization petitions; adjudication of asylum and refugee applications; adjudications performed at the service centers, and all other adjudications previously performed by the United States Immigration and Naturalization Service ("INS").

12. Defendant, Emilio T. Gonzalez ("Gonzalez"), is the current Director of USCIS. He is sued in his official capacity.

13. Defendant, F. Gerard Heinauer ("Heinauer"), is the current Director of the USCIS Nebraska Service Center. He is sued in his official capacity.

3

FACTUAL ALLEGATIONS

A. <u>Employment-Based Immigration</u>

14. In general, the first step to obtain lawful permanent residence in the United States is for an employer to file with the Department of Labor an application for a labor certification to certify that there are not sufficient United States workers available, and the employment of an alien (beneficiary) will not adversely affect the wages and working conditions of workers in the United States similarly employed.

15. In general, once the labor certification is granted, the employer files Form I-140 ("Immigrant Petition for Alien Worker") with USCIS on behalf of the alien.

16. The "priority date" is the date on which USCIS receives and accepts for filing the alien's labor certification in cases for which a labor certification is required before filing the I-140 application; in cases where labor certifications are not required for filing the I-140 application, then filing of the I-140 establishes the priority date.

17. Then, when an alien's priority date comes current, the alien files with USCIS Form I-485 ("Application to Register Permanent Residence or Adjust Status"), which, if granted, grants the alien lawful permanent residence status, *i.e.* the alien gets a "green card."

18. Moreover, an alien who is eligible to adjust status pursuant to an employment based petition can also add his or her spouse and unmarried minor children as derivative beneficiaries.

B. <u>The Visa Bulletin Procedure</u>

19. Section 201 of the INA establishes limits on family and employment based immigration; the yearly limit for the issuance of employment-based visas is approximately 140,000.

4

20. The State Department publishes a monthly visa bulletin, which, *inter alia*, lists the availability of employment-based immigrant visas for the upcoming month.

21. Based on the listed availability, USCIS and consular officers world wide request visas for applications being adjudicated at their posts or local USCIS offices.

22. The monthly visa bulletin indicates the availability of visas for family and employment-based preference categories, and separately lists countries that may have exceeded their allocation of visas; countries that have exceeded their allocation of visas are "oversubscribed," and individuals from those countries must wait before a visa can be issued.

23. Only individuals with a priority date earlier than the one listed on the visa bulletin, *i.e.* the priority date came "current," may file an I-485 application. Individuals whose priority date is after the one listed in the tables must wait until the priority date is included in a table published in the monthly visa bulletin.

24. Section 245(a) of the INA provides as follows

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification ... may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 USC §1255(a).

25. It has been the State Department's pattern and practice for over 30 years to issue visa bulletins at mid-month that set forth the availability of visas for the following month.

26. It has also been USCIS's pattern and practice to rely on the State Department's monthly bulletin when it, *inter alia*, requests visa numbers from the State Department.

27. The State Department's monthly visa bulletin is the only source of information regarding the availability of visa numbers.

28. The State Department has archived the monthly visa bulletins that are dated since January 10, 1994 on its website. *See* http://dosfan.lib.uic.edu/ERC/visa_bulletin/.

C. **The July Visa Bulletin**

29. On or about May 11, 2007, the State Department issued Visa Bulletin No. 106, Vol. VIII entitled "Visa Bulletin for June 2007" (the "June Bulletin"), a true and correct copy of which is attached hereto as **Exhibit A** and incorporated herein.

30. The June Bulletin "summarize[d] the availability of immigrant numbers during June." *Id.*

31. The June Bulletin set forth that all first-preference employment-based priority dates were "current," *i.e.* USCIS could accept applications from any alien eligible under first preference.

32. The June Bulletin, however, also set forth priority dates for, *inter alia*, second- and third-preference employment-based applications; *e.g.* only third-preference workers whose priority date was before June 1, 2005 could send the I-485 application to USCIS.

33. On or about June 12, 2007, the State Department issued Visa Bulletin No. 107, Vol. VIII entitled "Visa Bulletin for July 2007" (the "July Bulletin"), a true and correct copy of which is attached hereto as **Exhibit B** and incorporated herein.

34. The July Bulletin "summarize[d] the availability of immigrant numbers during July." *Id.*

35. The July Bulletin set forth that, *inter alia*, all first-, second-, and third-preference employment-based applications were current.

36. Indeed, the July Bulletin included the following forecast about the continued availability of employment-based immigrant visas:

> E. EMPLOYMENT-BASED VISA AVAILABILITY DURING THE COMING MONTHS
>
> All Employment Preference categories except for Third "Other Workers" have been made "Current" for July. This has been done in an effort to generate increased demand by Citizenship and Immigration Services (CIS) for adjustment of status cases, and to maximize number use under the annual numerical limit. However, all readers should be alert to the possibility that not all Employment preferences will remain Current for the remainder of the fiscal year. Should the rate of demand for numbers be very heavy **in the coming months**, it could become necessary to retrogress some cut-off dates for September, most likely for China-mainland born and India, but also possibly for Mexico and Philippines. Severe cut-off date retrogressions are likely to occur early in FY-2008.

*Id.* (emphasis added).

37. On information and belief, the visa bulletins have always been prospective; the State Department has never issued a visa bulletin reversing its position about the availability of visa numbers.

38. However, on or about July 2, 2007, the State Department issued an "Update on July Visa Availability" (the "July 2 Update"), a true and correct copy of which is attached hereto as **Exhibit C** and incorporated herein.

39. The July 2 Update provided, in full, as follows:

> UPDATE ON JULY VISA AVAILABILITY
>
> The sudden backlog reduction efforts by Citizenship and Immigration Services Offices during the past month have resulted in the use of almost 60,000 Employment numbers. As a result of this

7

> unexpected action it has been necessary to make immediate adjustments to several previously announced cut-off dates. All Citizenship and Immigration Services Offices have been notified of the following:
>
> **Effective Monday July 2, 2007 there will be no further authorizations in response to requests for <u>Employment-based preference cases</u>**. All numbers available to these categories under the FY-2007 annual numerical limitation have been made available.
>
> Employment preference numbers will once again be available to these chargeability areas beginning October 1, 2007, under the FY-2008 annual numerical limitation.

*Id.*, emphasis in original.

    40.    On information and belief, this is an unprecedented turn of events in that it is the first time in some thirty years that the State Department has purportedly rescinded a previous visa bulletin; an examination of the State Department's website reveals that it has not happened in at least a dozen years.

    41.    Also on July 2, 2007, USCIS issued its own update (the "USCIS Announcement") a true and correct copy of which is attached hereto as **Exhibit D** and incorporated herein.

    42.    The USCIS Announcement provides as follows:

> USCIS Announces Update on Employment-Based Adjustment of Status Processing WASHINGTON—The Department of State has revised its July Visa Bulletin to reflect that all available employment-based immigrant visas have been allocated for fiscal year 2007. As a result, beginning today, U.S. Citizenship and Immigration Services (USCIS) is rejecting applications to adjust status (Form I-485) filed by aliens whose priority dates are not current under the revised July Visa Bulletin. U.S. immigration law limits the number of employment-based immigrant visas that may be issued each fiscal year.

*Id.*

43. On information and belief, the State Department distributed almost 60,000 employment-based visas to USCIS in June.

44. Although the yearly allotment for employment-based visas is approximately 140,000, last year Defendants only issued, on information and belief, approximately 130,000.

45. Absent specific legislative authorization, leftover visas cannot be rolled over to the next year.

46. On July 30, 2007, USCIS raised its processing fees by an average of 66%.

47. The State Department indicated under its July 2 Update that it would not begin to issue any more employment-based visa numbers until October 1, 2007 for fiscal year 2008.

48. Therefore, in keeping with its stated position as well as its pattern and practice, USCIS under the July 2 Update would not begin to accept I-485 applications based on petitions for employment-based categories until October 1, 2007 as well.

D. **The Subsequent Updates**

49. Plaintiff's priority date came current under the June Bulletin.

50. On information and belief, under §245(a)(3) of the INA and under Defendants' pattern and practice for some 30 years and, certainly, for the last dozen years, USCIS has relied on the State Department's bulletin for a given month and continued to accept I-485 applications through the following month.

51. Plaintiff continued to revise and update her application, reasonably relying on the State Department's July Bulletin, which indicated that she had until at least July 31, 2007 to file her I-485 application because the July Bulletin indicated that <u>all</u> employment-based visas were current; indeed, the July Bulletin predicted that visas would not be exhausted until September.

9

52. Indeed, on information and belief, in June 2007 USCIS requested from the State Department almost 60,000 visa numbers for pending cases, many of which had not even had their background and security checks completed, a practice that violates longstanding USCIS/INS policies and procedures as well as the State Department's Foreign Affairs Manual ("FAM").

53. Counsel for Plaintiff flew from Chicago, Illinois to Lincoln, Nebraska on Monday, July 2, 2007 to ensure that her I-485 application would be filed with USCIS at the Nebraska Service Center on that date.

54. Plaintiff's I-485 application was received by the USCIS Nebraska Service Center on July 2, 2007.

55. Plaintiff, however, still has not received a receipt signifying acceptance of her application.

56. On or about July 13, 2007, the State Department issued Visa Bulletin No. 109, Vol. VIII entitled "Visa Bulletin for August 2007" (the "August Bulletin"), a true and correct copy of which is attached hereto as **Exhibit E** and incorporated herein.

57. The August Bulletin "summarize[d] the availability of immigrant numbers during August." *Id.*

58. The August Bulletin set forth that, *inter alia*, all first-, second-, and third-preference employment-based applications were unavailable.

59. However, the August Bulletin also includes the following: "After consulting with Citizenship and Immigration Services, the Visa Office advises readers that Visa Bulletin #107 (dated June 12) should be relied upon as the current July Visa Bulletin for purposes of

10

determining Employment visa number availability, and that Visa Bulletin #108 (dated July 2) is hereby withdrawn."

60. Moreover, the August Bulletin further includes the following: "All Employment-based preference categories are 'Unavailable' for August. At this time, it is uncertain whether any numbers will be returned and can be reallocated at a future date. Until informed otherwise, all readers should assume that the categories will remain unavailable until October, which is the beginning of the new fiscal year." *Id.*

61. However, on or about July 17, 2007, USCIS issued an update (the "July 17 Update") indicating that, *inter alia*, it would rely on the initial July Bulletin and treat the July 2 Update as withdrawn. A true and correct copy of this July 17 Update is attached hereto as **Exhibit F** and incorporated herein.

62. On or about July 23, 2007 USCIS issued a document entitled "Frequently Asked Questions" ("FAQ No. 1") that purported to clarify issues arising from Defendants' issuance of the July Bulletin, the July 2 Update, and the subsequent withdrawal of the July 2 Update. A true and correct copy of this FAQ No. 1 is attached hereto as **Exhibit G** and incorporated herein.

63. FAQ No. 1 includes the following footnote: "USCIS may issue future 'FAQs' on this topic for the benefit of the public, should additional questions arise. Such FAQs will be dated and numbered for ease of reference."

64. FAQ No. 1 listed answers to questions numbered by USCIS as Q1-19.

65. USCIS issued another such FAQ on or about July 27, 2007 ("FAQ No. 2") that purported to clarify yet more issues arising from Defendants' issuance of the July Bulletin, the July

2 Update, the subsequent withdrawal of the July 2 Update, and now FAQ No. 1. A true and correct copy of this FAQ No. 2 is attached hereto as **Exhibit H** and incorporated herein.

66. FAQ No. 2 also includes the same footnote: "USCIS may issue future 'FAQs' on this topic for the benefit of the public, should additional questions arise. Such FAQs will be dated and numbered for ease of reference."

67. FAQ No. 2 listed answers to questions numbered by USCIS as Q21[1]-32.

68. Also on July 27, 2007, Secretary Chertoff issued a "final rule" (Vol. 72, No. 147) amending a provision of the Code of Federal Regulations ("CFR") to permit filing I-485 applications with USCIS for a certain period under the old fee structure. A true and correct copy of this "final rule" is attached hereto as **Exhibit I** and incorporated herein.

69. This final rule contained the following summary:

> This rule temporarily amends the applicable fees for employment-based Forms I-485, "Application to Register Permanent Residence or Adjust Status," and applications for derivative benefits associated with such Forms I-485 filed pursuant to the Department of State's July Visa Bulletin No. 107, dated June 12, 2007. The fees for all other petitions and applications administered by U.S. Citizenship and Immigration Services will continue in force as effective on July 30, 2007.

*Id.*

70. This final rule promulgated by Secretary Chertoff and USCIS also contains the following language: "After consulting with USCIS, DOS [State Department] advised USCIS that July Visa Bulletin No. 107 should be relied upon for purposes of determining whether employment-based immigrant visa numbers are currently available." *Id.*

---

[1] For reasons unknown, USCIS omitted Q20 from either FAQ Nos. 1 or 2.

71. Also on July 27, 2007, Secretary Chertoff issued a second "final rule" (Vol. 72, No. 159) amending a provision of the CFR setting a date on which the window to file under the old fee schedule would be closed. A true and correct copy of this second "final rule" is attached hereto as **Exhibit J** and incorporated herein.

72. The second final rule contained the following document summary:

> This document amends the fee schedule for petitions and applications for immigration and naturalization benefits administered by U.S. Citizenship and Immigration Services. This rule readjusts the fees for Forms I485, "Application to Register Permanent Residence or Adjust Status," and applications for derivative benefits associated with Forms I485. This rule removes the temporary adjustment of fees promulgated in [sic] previously and permits the application of the fees as were originally published in the final rule of May 30, 2007, that became effective on July 30, 2007.

*Id.*

73. The second final rule indicated that its effective date, *i.e.* the date on which the new fee schedule would go into effect, was August 18, 2007.

74. USCIS issued yet another FAQ on or about August 8, 2007 ("FAQ No. 3") that also purported to clarify yet more issues arising from Defendants' issuance of the July Bulletin, the July 2 Update, the subsequent withdrawal of the July 2 Update, and now FAQ Nos. 1 and 2. A true and correct copy of this FAQ No. 3 is attached hereto as **Exhibit K** and incorporated herein.

75. FAQ No. 3 listed answers to questions numbered by USCIS as Q33-38.

76. On or about August 13, 2007, the State Department issued Visa Bulletin No. 110, Vol. VIII entitled "Visa Bulletin for September 2007" (the "September Bulletin"), a true and correct copy of which is attached hereto as **Exhibit L** and incorporated herein.

77. The September Bulletin "summarize[d] the availability of immigrant numbers during September." *Id.*

78. The September Bulletin set forth that, *inter alia*, all first-, second-, fourth-, and fifth-preference employment-based applications have priority dates of January 1, 2007, and third-preference have priority dates of August 1, 2002 (except for mainland-born China, India, the Philippines, and Mexico).

## CLASS ALLEGATIONS

79. This matter is brought pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) and (b)(3) on behalf of a class consisting of individuals in employment-based categories (except for "Other Workers") whose priority dates were current under the July Bulletin.

80. The class is so numerous that joinder of all members is impracticable.

81. There are questions of law and fact common to the class. The common questions of law include whether Defendants violated their duty in rescinding the priority dates; common questions of fact include the policies and procedures of Defendants in relation to setting and rescinding priority dates.

82. The claims of the named Plaintiff are typical of the claims of the class. Plaintiff knows of no conflict between her interests and those of the class she seeks to represent. In defending her own rights, Plaintiff will defend the rights of all proposed class members.

83. The claims of the representative will fairly and adequately protect the interests of the class.

84. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

85. Defendants have acted on grounds generally applicable to each member of the class insofar as, *e.g.*, they rescinded priority dates with the July 2 Update.

86. The July 2 Update created the situation that Plaintiff and all others similarly situated could no longer apply for status as lawful permanent residents.

87. The July 2 Update created the situation that those whose lawful immigration status would have expired prior to the start of the 2008 fiscal year (or the next date that visa numbers become available again) have returned or may have to return to their home countries at great expense and await consular processing, thus increasing their risk of losing employer sponsorship; Defendants' subsequent issuance of updates, bulletins, final rules, and all other acts described *supra* have failed to adequately rectify the harms to Plaintiff and others similarly situated.

88. Those who have a renewable status (such as H1B's in their first 3 year term) may have to extend that status, at great cost and risk of loss of status; Defendants' subsequent issuance of updates, bulletins, final rules, and all other acts described *supra* have failed to adequately rectify the harms to Plaintiff and others similarly situated.

89. The July 2 Update also created the situation that derivative spouses and children would not be able to work and travel; Defendants' subsequent issuance of updates, bulletins, final rules, and all other acts described *supra* have failed to adequately rectify the harms to Plaintiff and others similarly situated.

90. Certain derivative children "aged out," *i.e.* reached the age of majority (21) before their parent was able to file his or her I-485 application and may have no independent basis to remain in the United States; Defendants' subsequent issuance of updates, bulletins, final rules, and all other acts described *supra* have failed to adequately rectify the harms to Plaintiff and others similarly situated.

91. Certain individuals accrued more than 180 days out of status under §245(k) of the INA during the window after the July 2 Update and now may have come to be ineligible to file their I-485 applications; Defendants' subsequent issuance of updates, bulletins, final rules, and all other acts described *supra* have failed to adequately rectify the harms to Plaintiff and others similarly situated.

92. Certain individuals would have been permitted to file their I-485 applications under the old fee schedule and pursuant to the July Bulletin but, due to Defendants' actions, are now only able to file under the new, significantly higher fee structure under the July 17 Update; Defendants' subsequent issuance of updates, bulletins, final rules, and all other acts described *supra* have failed to adequately rectify the harms to Plaintiff and others similarly situated.

93. Certain individuals would have been permitted to file their I-485 applications under the new fee schedule but, due to Defendants' actions, were then only able to file under the old fee structure; Defendants' subsequent issuance of updates, bulletins, final rules, and all other acts described *supra* have failed to adequately rectify the harms to Plaintiff and others similarly situated.

94. The consequences of being placed in such an uncertain immigration status are severe.

## COUNT I: VIOLATION OF THE FIFTH AMENDMENT

95. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs Nos. 1-94 *supra*.

96. Plaintiff's liberty and property interests include, but are not limited to, the expended attorney fees, filing fees, travel fees, and medical examination fees in preparation for the I-485 applications as well as the arbitrary and capricious rejection of applications and potential loss of status.

97. Defendants' acts described *supra* constitute a violation of procedural due process rights under the Fifth Amendment of the United States Constitution.

98. Defendants' acts described *supra* also constitute a violation of substantive due process rights under the Fifth Amendment of the United States Constitution.

## COUNT II: VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

99. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs Nos. 1-98 *supra*.

100. Defendants' acts described *supra*, including but not limited to the issuance of the July 2 Bulletin, the USCIS Announcement, and the following updates, bulletins, *et al.*, were arbitrary and capricious, and Defendants' subsequent issuance of updates, bulletins, final rules, and all other acts described *supra* have failed to adequately rectify the harms to Plaintiff and others similarly situated and are, therefore, themselves arbitrary and capricious.

101. Defendants' arbitrary and capricious acts described at length *supra* constitute the rescindment of a regulation, which has no rational connection between the facts and the rescindment made.

102. Defendants' acts described *supra* are agency actions unlawfully withheld and, therefore, constitute violations of the Administrative Procedures Act, 5 USC §706, *et seq*.

103. Moreover, Defendants' acts described *supra* are unlawful agency actions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and therefore constitute violations of the Administrative Procedures Act, 5 USC §706(2)(A).

## COUNT III: DECLARATORY JUDGMENT ACT

104. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs Nos. 1-103 *supra*.

105. Plaintiff seeks a declaration that Defendants' acts described *supra* are unlawful and constitute violations of legal duties that Defendants owe Plaintiff and all others similarly situated under the INA.

106. Defendants' violation of the legal duties owed Plaintiff and all others similarly situated include, but are not limited to, arbitrarily and capriciously rejecting Plaintiff's I-485 application, which is timely under the July Bulletin.

## COUNT IV: EQUAL ACCESS TO JUSTICE ACT

107. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs Nos. 1-106 *supra*.

108. Plaintiff, as a prevailing party in a civil action against the United States or agency or any official in the United States acting in his or her official capacity, will seek attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 5 USC §504 and 28 USC §2412.

COUNT V: PROMISSORY ESTOPPEL

109. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs Nos. 1-108 *supra*.

110. On information and belief, the State Department issued the July Bulletin in good faith and with the intent that consular officials, attorneys, and other interested persons, including the aliens, would rely upon the continued availability of visas for a reasonable period, which is at least six weeks.

111. On information and belief, the State Department further intended to induce the interested persons to act in accordance therewith.

112. Plaintiff did in fact justifiably rely upon the July Bulletin and was reasonable in her actions; Plaintiff's reliance upon the July Bulletin was reasonably foreseeable and expected.

113. As a direct result of Plaintiff's reasonable reliance on the July Bulletin, Plaintiff's I-485 application was timely when prepared and filed, yet ostensibly became untimely after the issuance of the July 2 Update.

114. The July 2 Update was neither identified as nor intended to be a *nunc pro tunc* revision to the July Bulletin.

115. Instead, the July 2 Update was issued in violation of the State Department's custom and practice over at least the last dozen years and acted as a complete revocation of rights extended to Plaintiff.

116. Moreover, USCIS's issuance of the USCIS Announcement was similarly unprecedented, in violation of its custom and practice, and acted as a complete revocation of rights extended to Plaintiff.

117. Injustice can only be prevented by the application of the principal of promissory estoppel.

REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectively prays that this Court:

(i) Assume jurisdiction over this matter;

(ii) Certify a class of individuals consisting of individuals in employment-based categories whose priority dates were current under the July Bulletin (stated another way, all preference categories, except for those designated "Other Workers");

(iii) Declare that Defendants' policies, practices, and customs violate the United States Constitution, the INA, and the Administrative Procedures Act;

(iv) Enjoin Defendants from rejecting I-485 and related applications and petitions with priority dates current under the July Bulletin filed or mailed between June 29, 2007 and August 17, 2007;

(v) Enjoin Defendants from rejecting I-485 and related applications and petitions from anyone eligible to file on July 2, 2007 but for the issuance of the July 2 Update;

(vi) Award damages in an amount to be determined at trial;

(vii) Award reasonable attorney's fees and costs; and

(viii) Grant such other and further relief as may be just and proper.

Respectfully submitted,

s/Roland Lara
Y. Judd Azulay
Linda Babich
Glenn Seiden
Roland Lara
Azulay, Horn & Seiden, LLC
Counsel for Plaintiff
205 North Michigan Avenue, 40th Floor
Chicago, Illinois 60601
312.832.9200